May it please the Court, Elizabeth Letcher for Appellants. I'd like to reserve three minutes for rebuttal, if possible. The appellant's complaint alleged Chase's systematic breach of individualized contracts that it entered into with Herminia Morales, Michelle Cerenovsky, and thousands of other California homeowners. And it also more broadly challenged Chase's unfair and unlawful conduct in by using the Home Affordable Modification Program to collect debt and fees. When this case was filed in 2010, it alleged novel legal theories against the background of a new and complicated and controversial federal program. And the district court did a drastic thing. It denied every single one of the appellant's claims without leave to amend, using a convoluted and erroneous futility rationale. And it used that rationale not only to deny leave to amend on the contract claims, but to sweep away other fact-intensive claims that were not logically barred by its reasoning. This Court can affirm only if it's clear that the complaint can't possibly be amended under any theory to allege to plausibly allege claims. Well, let's just jump right into it. And I think the first part of it, how can we find that the TPP here was a contract if only one party signed it? I think you have the Seventh Circuit case where they did find a contract. And my understanding is the language is language that basically comes from the from Congress as far as that goes. And but they seem to but the Seventh Circuit case seemed the bank signed the contract as well. And here we don't have that. So how can we find a contract? So the Wygod Court decided the case that was in front of it. And in that case, Wells had sent Lori Wygod a signed TPP before she even started making trial period payments. And after that, it declined to offer her a permanent HAMP modification. Here the facts are different. She doesn't have a signed TPP. So what are we to make of the fact that there is an assigned TPP and the contract TPP that she got says that the lender will send me a signed copy of this plan if I qualify or the offer will send me a notice that I do not qualify? So I think What exactly is this? What exactly is the significance of an unsigned TPP? I think it's an issue The Seventh Circuit said that once Wells Fargo signed a TPP agreement and returned it to Wygod, an objectively reasonable person would construe it as an offer to provide a permanent modification agreement if she fulfilled the conditions. I think at the most it's a question of fact, whether it's a condition precedent that has been waived by Chase's continuing acceptance of payments under the TPP. But I think that the interpretation that the court in Enrique City offered is the best one, that it's an unreasonable reading of the contract to view that as a condition that allows Chase to escape any responsibility and allows unfettered discretion to decide whether to modify a loan when the borrower is qualified and performs all the conditions under the TPP. Well, Chase, if I understand Chase correctly, they say they really have no unfettered discretion that they're regulated by, I forget which agency regulates this, and there are rules and if they don't comply and they're just arbitrary, there's a remedy by going to the agency that regulates them. Those rules are separate from the obligations that it entered into when it entered into the TPP contract with each of these individual borrowers. But how do we get around the words, this is not a contract? Which words, this is not a contract? Let me refer you to, well, go ahead and speak. Okay. The TPP is not a loan modification. It's an offer for, it's an offer to make a decision within three, so it's a contract to make a decision within three months, yea or nay, and to offer a different modification, a home affordable modification to borrowers who do qualify. And I think it imposes on Chase an obligation to reasonably and accurately do something at least to evaluate that decision. Well, it says, I guess the language says, I understand that the plan is not a modification of the loan documents and that the loan documents will not be modified unless and until, one, I meet all the conditions, two, I receive a fully executed copy of the modification agreement and the modification effective date has passed. That's true. I further understand and agree that the lender will not be obligated or bound to make any modification of the loan documents if I fail to meet any one of the requirements under the plan. And our complaint alleges that they met all of the requirements under the plan, that they applied with fully documented information. The complaint also alleges that they should have been prequalified with an NPVN1 test. And despite the basically factual battles that the parties are having in the appellate briefing, that's an allegation that has to be taken as true for the purposes of this appeal. Okay. But it said it's not a modification agreement. And then later it says, upon execution of a modification agreement by the lender and me, this plan then will terminate. So the TPP is not a modification agreement. What is it? I've never argued that it is. It's a promise to offer a modification agreement. But it's not signed. That's what I've got. I'm not unsubstantiating to your position, but it's not signed. And I think that Chase argues that, look, this was at a time when we were taking oral information and we're making quick judgments, and Congress wanted us to act quickly because there was this great crisis, and, you know, just take oral representations and modify the loan in effect, which they did in these cases. First, they were supposed to take oral representations and do at least some kind of prequalification before offering this. And under the circumstances presented in this case, where at the end of the three months, when they were, I think, the second paragraph combined with Section 2F, clearly contemplates that they're supposed to be making a decision of some kind within three months. But let's assume that we say it's not a contract, all right, that this argument that you're making, if the TPP is not a contract, is there any way to find promissory estoppel? Is there a clear other clear promise upon which the plaintiff's promissory estoppel claim? Does it have to be a contract to have promissory estoppel here? No. Promissory estoppel is an alternative theory that relies on the same basic promise if there is some flaw in the contract. Now, I think here it's a question of fact whether But do you allege another promise in the complaint? So would you say, I think maybe you don't, but let's say if there is not a contract, but then you're saying could you allege another promise and amend the complaint? We certainly could amend the complaint. And I think in the two years since this case was filed, other advocates have offered a more refined interpretation of what the TPP promise is, and that's that at least it promises a decision within three months. So the people aren't left hanging making payments on a loan that they can no longer afford. If I understood you correctly when you opened, the relief that you're asking for is simply to have to go back to the district court to let you file an amended complaint. I think that the decision or modification theory is squarely before this court at this point. Well, I'm just basing it on how you opened your argument. I think that the court can decide now that the complaint can state a claim. I think we would amend it to allege additional facts and allege our theories more clearly if it were remanded. But the court can reverse because it plausibly states claims right now, not only for breach of contract, but for unfair business practices. Okay, but we also could say, and we're talking hypotheticals at this point, that it's not a contract, so you don't have that claim, but that you would have a Rosenthal claim, that you would have an unfair competition claim, et cetera. Yes. And that's what I was asking you, that you could technically have a promissory estoppel claim even if you can't have a contractual claim. Yes. I think that as the Wygod Court said, the HAMP rules shape the reasonable expectations of the parties on the allegations of the complaint. Borrowers who submitted on the basis of written documentation, who performed under the TPP, and nothing changed. Let me ask you this. On the unfair competition claim, can you explain to me, because one of the elements is that the plaintiffs have to suffer injury, in fact, or loss of money or property when they paid reduced mortgage payments and remained in their homes during that time. So what is their injury? I'd like to answer that question by walking the Court through the facts relating to Michelle's case. Well, I'd like you to answer the question now. So if you would answer that question now. Okay. When a borrower enters into the TPP, they don't already owe the mortgage payments for the months that they're going to be in the TPP. A mortgage is you pay interest on a loan for the time that you're using the money. The borrowers had other alternatives. For Michelle Cerenovsky, she could have sold the house the day she realized that she couldn't pay her 8.25% mortgage. And because it was a below market rate unit, the township that she lived in would have bought it, and she would have been done with that loan and ready to start her life afresh. She could have started rebuilding her credit. The investor would have been made whole. There would have been no problem at all. But instead, because Chase induced her to enter the TPP by saying, look, we want to help you, make partial payments nearly at the end of the year. So her injuries are she paid, she could have, she wouldn't have had to pay the money for that period of time. She could have walked away, and then she would have had that money that she paid for those several months. Absolutely. And she wouldn't have had the bad credit reporting that she had during that period. Not just the money that she paid during that several months, because, sure, she paid less than her contract rate. But they had to knock it down to what they estimated would be a third. They did knock it down. 31% of her monthly income. But she still owes the entire amount. But she always owed it. No, she didn't. And she lived in that house at a reduced rate of the mortgage. And I don't know, are you saying that she could not, let's say, after they ultimately it became clear she wasn't getting the modification, she could have sold the house then. That's right. But she didn't owe the interest and fees when she entered into the TPP. She owed a couple months of arrearage, but she could have paid that off by selling the house. But she didn't owe the eight months going forward. When I enter into a 30-year mortgage, I don't owe 30 years' worth of interest. I only owe interest and fees for the time that I'm borrowing the money. If you stop borrowing the money, you don't owe the money going forward. And now she's on the hook for nine months' worth or eight months' worth of an eight-and-a-quarter percent mortgage. Can I ask you the reverse of Judge Callahan's question? Can you spell out how, in your view, the bank is unjustly benefited from this conduct? During that time, you know, Ms. Sarnofsky was told at the end of her trial period that she qualified. And they told her, go ahead, keep making more HAMP trial period payments. They sent her coupons. And it accepted payments during that time. And three months later, they told her she'd actually been ‑‑ they had determined that she didn't qualify two months before. So she was making two months of payments under the belief that she had a genuine chance of saving her home. And those payments are interest and default-related fees. Now, the investor could have been made whole had she sold her house when she started. But instead, Chase is basically lining its pockets with default-related fees and using misrepresentations, misusing the HAMP program to keep her in default. What exactly are the default-related fees? I'm not sure I understand. I mean, they're modified almost immediately. They modify the terms of her mortgage. It reduces the mortgage payments. And then after a time, they say either implicitly or explicitly. They don't actually reduce her mortgage payments. They say they'll accept a lesser payment. But in the TPP, it says that she still owes the full amount of her mortgage payment. So with each passing month ‑‑ She always did. She always owed that. She only owes it for as long as she's in the house. Right, as long as she's the owner of the house. That's true. But she chose to stay in the house because she thought she had a genuine chance of saving it. She wouldn't have stayed in the house and made those partial payments and incurred the full debt had she not made that choice. The default-related fees that I'm talking about are late fees. They are property inspection fees. They're the fees that they charge for the pre-foreclosure steps because at this point they were dual tracking loans, so they were barreling ahead toward foreclosure. So they're paying third parties for doing things like recording substitution of trustees and other foreclosure-related fees. And, you know, while it's an individual borrower, this may be only a matter of $1,000, you know, writ large, that's a huge amount of money. Melissa, is she ‑‑ I'm sorry. No, that's okay. I was just saying at this stage you're arguing that all of that says at least that you can state a plausible claim for the unfair competition on the injury.  Not that you win, but just that you can state a cause. All that we have to do is offer, you know, a plausible interpretation of the TPP contract that gives rise to a breach of contract claim, and I think that we've done that. And all we have to do is state a plausible claim for unfair use of the HAMP program to collect debt and that the HAMP ‑‑ that Chase's use of the HAMP program could potentially mislead the least sophisticated debtor. And I think that we've done that. I'd also like to briefly address the breach of the covenant claim, which I think has gotten a little swept away as well. Even the district court recognized that the TPP is a contract, even if it governs only the three months of the trial period. Is it a ‑‑ this is what I'm trying to get at, and I've been trying to think this through in my own mind. Is it a ‑‑ it's not a signed contract. And they said you'll get a signed contract and a modification agreement if we determine you qualify. But I assume that it's still to the extent that is it still a contract, and maybe the question is better asked of Chase, is it still a contract even though it's not signed? In other words, I don't know, is this a statute of flaws problem here? I assume that they could make promises in writing which are unsigned that obligate them to do things. There are two contracts at issue. One is the TPP, and one is the permanent HAMP modification. The permanent HAMP modification will modify a contract having to do with land, and that's going to be subject to the statute of frauds. But this contract is a contract that promises an offer later, an offer that's going to have terms that are determined according to a formula set out in the HAMP program. Chase offered it. The borrowers accepted by signing and fully performing. And if there was a condition precedent or if there was a signature requirement, I think it's a question of fact whether Chase waived it by continuing not only to accept but to actively demand payments for months after it ended. I think that indicates a clear intent to waive that requirement. If it is a requirement, I think it makes more sense to read it as part of the agreement to make a decision within three months. Paragraph 2 says evaluate them, decide whether they qualify, and sign to send back the TPP or send them a written denial. And here Chase did neither. If, for example, I'm just using this hypothetically, if the court were to find this were not a contract but said on the others reversed, you're still in federal court? Yes. Because the promissory estoppel is based on? No, none of these are federal. Because you were removed to federal court by the defendant, right? We filed in federal court because of the diversity jurisdiction. Because of? Because of diversity jurisdiction. Not in federal question? Right. Okay. There's no federal question here. Can I ask you just one quick question? It's unrelated but it's been on my mind. You gave us one example where Chase said continue to make the payments and then they changed it. They said you qualify, you don't qualify. Is this qualify? It sort of struck me, is this the material of a class action where it may be, where you may have dependent, may be fact dependent on what happened in any given case? I think that's a question that will certainly be argued during the class certification stage. But we allege that this experience is absolutely typical. And I think that Chase gave you a great example with the consolidated complaint that's been filed in the multi-district litigation that lists how typical these experiences are, that Chase continued not only to accept but to demand trial payments for months on end. And I'd like to reserve my remaining time for it. Well, you only have 17 seconds, but I'll give you two minutes for rebuttal. All right, I'll give you two minutes for rebuttal. Thank you. Thank you. Good morning. Good morning. May it please the Court, on behalf of Chase, we urge affirmance of the district court's decision. Can you give us your name? Michael Agolia. Okay. And will you be using the whole 20 minutes? Because I notice there's someone else at counsel table. I will, Your Honor. Okay. Thank you. Could you tell me what the TPP is? Do you agree that whether you signed it or not, it was – it still was a binding agreement for you? I mean, people acted in accordance with its terms. So I assume that it didn't – it was – are you arguing that it was not a binding contract even though you didn't sign it? Yes. We are arguing this is not a contract. We submit further that this form did not – What is it? I mean, you made – you told people and you acted in accordance with its provisions. So was this some sort of a voluntary conduct on your part? Your Honor, in this context, it's absolutely routine for these Federal programs to be administered with notices. This was developed by Treasury to – Okay. But you got $25 billion worth of TARP money, right, which you accepted. And you were obligated – that makes you obligated to participate in HAMP, right? Incorrect. Chase voluntarily agreed to participate in HAMP by entering into a service of participation agreement with Treasury. It was not compelled. It was not connected to its receipt of TARP funds at all. That's a mistake that's been a thread through these briefings. Not true. But it did – Did it accept $25 billion? And returned it, yes. But unrelated to its participation in the HAMP program. That was a separate act. It didn't have to do that. It voluntarily participated. And as you said earlier, it is Chase's position that it doesn't have unfettered discretion here. It has a binding contract to administer the program in accordance with the Treasury's guidelines here. And that's what it – It's a contract with? Treasury, Your Honor. And one of the theories alleged – the outset of these cases really involved attempts to enforce that contract as third-party beneficiaries or under a due process claim. Those are the claims that were rejected because courts consistently said there's no reasonable expectation that you're going to permit a modification under this program given its design, given the need to qualify. But this, I submit to you, is a notice developed by Treasury to tell borrowers of the – of their But you didn't write this contract. We did not. I didn't mean to say this contract. You didn't write this document. We did not. But let me turn to if you are going to consider it as they have asked you to, and we think it's a round peg, square hole problem again and again trying to do this, but you have to then enforce it according to its terms. It's not just Let me ask you this initially, because we were talking about the TARP program. Is Chase in any different position than Wells Fargo was in the seventh in terms of its participation in the program? Not in the sense that both had to voluntarily agree. It's the same thing. That's right, Your Honor. The – this document recites how it will take effect. It explicitly says not just that the countersigning of a TPP signifies that the lender servicer has determined that you qualify under the program. It says, quote, this plan will not take effect unless and until both I, the borrower, and the lender sign it and the lender provides me with a copy of this plan with the lender's signature. There's an express formation provision. And that's the only distinction, isn't it? Right. But that's the fundamental distinction. Really? By signing it, what that signifies is two things. One, this plan takes effect under its express provisions. But I would say to you, even more profoundly and important for the theories here, it also signified that the borrowers had to sign the TARP program.   They had to sign it. They had to sign it. They had to sign it. What's contemplated here, and I heard counsel conceive this, they have to be qualified. The bedrock principle of this program is an attempt to discern through an analysis of the financial aspects of a particular loan whether it made more economic sense to modify it with some taxpayer incentives going to the borrower and taxpayer That is the crux of this program. And the problem with their theory is that it would eviscerate that. It's by design, in aid of classification, only this. If you enter into this agreement by signing it unilaterally and you make the three payments and submit the required documentation, you're guaranteed under their core theory of the case, guaranteed a permanent modification. I refer you to, on promissory estoppel, I refer you to paragraph 129 of the complaint. That's what it says. That's the promise. This says you get a guarantee whether or not Chase qualifies you as eligible. That turns the program on its head, and the Court was right to dismiss that theory. It's the contract theory. The only embellishment there is it's a guaranteed offer of a permanent modification. I guess what I was asking, counsel, for the appellant was if the Court were to conclude that it's not a contract, the way that it's pled, is that the only basis that's listed in the complaint, that it would have to be promissory estoppel based on a contract? And I guess what you're saying is yes, but then I also said, is there another promise that you would be able to allege? Because that goes to the dismissal without leave to amend. And I didn't hear another promise articulated to this Court, and there certainly wasn't another factual assertion that they suggested they could, by amendment, plead that would be a viable promissory estoppel claim. It was one core theory. There was one theory of breach. Counsel has alluded to on a couple of occasions this notion that it's now got to be an agreement to make a decision within three months. You'll find no deadline within which Chase had to make its decision in the estoppel. Well, I guess, I guess if the Court were to find it was not a contract, then the way that it's pled, you would argue that the promissory estoppel can't stand as it is, but then we have to look to the leave to amend. The unfair competition and the Rosenthal I don't think automatically collapse in the same way if there's not a contract. What's your response to that? Let me address them in order. I think you're right, and counsel is right, that they had other unfair competition allegations in addition to saying you haven't complied with the HAMP rules, in addition to saying there's this unilateral commitment to make a permit modification if the borrower just makes the payments and submits the documents. But again and again and again, we asked for the motion dismissed to specify what those facts were, how they related to the named plaintiffs, and how they related to actionable restitution under 17-200. Let me review what I just heard on that score a moment ago. I heard counsel articulate a theory that the money was not, in fact, previously owed and owed on an ongoing basis because they had unilaterally decided that despite the fact that the mortgage requires ongoing payments, they were no longer considering themselves borrowers. That's not how mortgages work. They owed every dollar that they paid through these reduced trial payment plans. They defaulted on each of these loans months before they entered the trial plans. That's why they came to chase an ass to be considered for a mortgage application. But as a matter of law, we have submitted to you the underlying loan documents that we have submitted. I don't mean to interrupt you, but their argument is that they weren't obligated to make future payments until the date that they would do. That's the argument that I understood your adversary was making. In other words, yes, we are obligated to make payments for 30 years, but the obligation for each month comes each month. So I'm not obligated today to make a payment for six months from now. It's absolutely just not true. When you sign your mortgage, you are obligating yourself on the first of the month, typically, or whenever that monthly anniversary is, to make the payment on that day. All this TPP. But until that date comes, you don't have to make the payment. That's what I understood her argument to be. I understood it somewhat differently, but in taking that as the theory. That's how I understood it. These are no different. They're making the payments on the first of the month. And on that first of the month, they also owed that plus an additional amount under the preexisting contract. Receiving that money can't, as a matter of law, constitute unjust enrichment, can't constitute a basis for restitution. It was owed, every cent of it, on that day when they paid it. I don't understand that. I'm not sure I understand. Let me go back to the Wygod case for a moment. The question there, and I thought the question here as well, was whether or not when they sent the materials, they made an offer that would become binding once those conditions were met, what the borrower had to do. And the argument there was that the borrower fulfilled the conditions, and the argument here is that the borrower fulfilled the conditions, and that, therefore, the bank is obligated contractually to recognize this. And I don't see the difference between this case and Wygod other than the fact that what they offered was signed, and in this case it wasn't. It seems immaterial because it turns on the sending, the representations in sending it, that if they complied it would be a contract. Respectfully, I think that misunderstands Wygod. Okay. For two reasons. One, the sending of a countersigned TPP has independent legal significance in bringing into effect this TPP where it otherwise does not come into effect by the express language of this purported contract. But secondly, and this is the basis upon which Wygod rested, under the express terms of this agreement as well, the sending of the countersigned TPP signified to the borrower that they had satisfied the condition for a permanent modification that Wells Fargo deemed them, through its independent review, qualified. There is no such act that occurred with respect to Ms. Morales and Ms. Suranovsky. They were never deemed eligible. They cannot – they did not below say they ever met the detrimentive test for whether or not it makes more sense to modify or not. That's the NPV test that runs through Chase's model on the basis of verified information. It never happened. So when the Senate circuit says once Wells Fargo signed it, the agreement, and returned it to Wygod, an objectively reasonable person would construe it as an offer to provide a permanent modification agreement if she fulfilled its conditions. Right. And I think if you read the preceding discussion, or the following discussion, it says, because that was a response to Wells' argument that, no, it's not a unilateral offer to make a permanent modification if they – if the borrower satisfies its remaining obligation, making the payments, sending in the documentation. Because we have to qualify them. We have to underwrite them. The Seventh Circuit accepted, because you have to on the face of this TPP and under the HAMP guidelines, that they have to be so qualified. It just said that obligation of the lender had already been discharged by virtue of having countersigned the TPP, which signifies that the borrower qualified for the offer. That's what it says in the TPP. If you countersign it and we send it back, it says to you, we've already qualified you. That never happened here, and that's the great divide. They would like it to be not just a contract, which we submit it's not, but a contract which binds Chase to offering on the promissory estoppel to actually making a permanent modification just by the act of submitting three payments and required documentation without going through this NPV positive test. And they recognized in the qualification issue below, they said, well, we could perhaps amend to allege that we were generically qualified. That's not enough. What they – what they – under – both parties agree. You have to be able to say that the lender ran it through the NPV test, using verified financial information, and the loan came up positive. They never said they could do that below, and they can't say that today, consistent with Rule 11. If they were not qualified, so there was no obligation to provide an offer of permanent modification or permanent modification, and so the Court's ruling on that basis is completely correct. Let me ask you this. If, considering that courts have disagreed about what the TPP promises, isn't it plausible that the TPP could mislead the least sophisticated debtor? It's a very good question. The standard under the Rosenthal Act – the standard under the Rosenthal Act is least sophisticated, but rational, and you have to presume they read the whole document. For their – for their claim to proceed, you would have to say that a rational, though unsophisticated consumer reading the whole document would conclude that you get a permanent modification of your existing loan without regard to whether or not you're determined to qualify. Well, I wonder if that's true. When we've been preparing for this case for six weeks, and I would like to think that our level of preparation makes us a little more than the least sophisticated debtor, so – and we're still asking all these questions. It's still hard. So that, you know, that seems to give some credence to the fact that courts can't agree, and we're spending a lot of time poring over these documents. How can – if we're having trouble, why doesn't that give trouble to the least sophisticated debtor? I appreciate it. We are also, as lawyers, parsing it in places. I think if you read it as a whole, you have to ask yourself, was it reasonable for Judge White to come to the conclusion that you would have to, at a minimum, a rational, even unsophisticated consumer conclude, I don't get a permanent modification guarantee out of this if I don't qualify. And I think that was a fair holding on his part. Let me go back to the legal detriment issue for the UCL claim, because we've had this discussion about, well, they might have done other options. It's entirely speculative. It wouldn't pass muster in any run-of-the-mill tort case. Under California law, what they would have to say is that they had, quote, definite expectations as to other alternatives. For instance, they mentioned bankruptcy. Neither Ms. Morales nor Ms. Saranofsky alleges that they ever considered bankruptcy. They never allege, as they would have to to show detriment, that they would have, but for the TPP, gone to bankruptcy and would have been better off. It's an entirely open question. They say, well, we might have done a short sale. Well, you have to have the investor approve those short sales. It's not guaranteed. None of them said, I want to leave this home, so I would have really considered that. It was entirely speculative. The credit reporting reference. The credit reporting that they were delinquent owed to the fact that, in truth, as they allege, they were delinquent. They were months behind on the mortgage before this started. What they're really saying is, we hoped the credit reporting would be improved if we submitted reduced payments. And, indeed, for Ms. Saranofsky, what they allege is they reported, Chase reported that they were both delinquent and making payments under a workout plan. I think that's what they allege they should have been doing. But even if they just allege that they were delinquent, it's accurate, and there was no detriment they suffered by entering into the TPP. It's just not a viable allegation, and we submit the Court's UCL decisions to be affirmed on that basis. Kennedy, I'm still confused. You keep saying when they entered into the TPP, and from what I understand, all you're saying is the TTP was simply the same thing as says, notice of the --" notice of what will happen here, and that it's otherwise a meaningless piece of paper. Even though they're not delinquent. Very fair point, Your Honor. I should change the phrasing there. When they began the TPP, I think using their point of departure about detriment, accepting that they entered into these agreements as they characterized them, it's still not legal detriment. There was nothing by doing that that adversely affected their credit from what it was before. There's nothing that they can point to as a definite expectation that was frustrated by the participation in the trial plans. The rest of it is speculative. If you look at the district court's decision, I take real issue with the characterization that this was a drastic result. It was very careful. If you look at that transcript of the hearing, there was invitation after invitation to articulate specific facts which would entitle plaintiffs to an amendment. With respect to the UCL claim, they referred to, and it's summarized in their appellate briefing at page 42, note 7, what they talked about was leave to amend to allege, quote, other specific communications from Chase, such as language and modification-related correspondence, press releases, and Chase's website. There was no facts there. What other specific communication? How was it misleading? The Court asked the question, tell me what the material misrepresentation omissions are. And this is what came back, a reference to the 2012 Chase website. How does that give you an entitlement to a UCL claim? The Court was well within its discretion not to grant leave in those circumstances. Kennedy, what about their argument that, about the three months, that you had to have at least, within three months, either made a decision or told them yes, or given them a written notice that they – not that you had to make a decision. That you either had to give them a modification or you had to give them written notice, and that you didn't. And that there is, I think, an argument to be made the way this – you know, you set out a schedule of payment for three months. So am I correct that in the document you gave them, you said these are the three months that you have to make payments? So wouldn't they be under the impression that within three months, reasonably, that they would either – you would make a decision and you would send them a written notice? Your Honor, I just don't think you can infer that term, which does not exist here, and it's not reasonable to do so. It's contrary to the – But I think she also said that you had made a decision and you didn't inform them – you made a decision, they weren't qualified, but you still kept taking the payments. They allege that we may – we informed them orally but not in writing. That's their allegation in the complaint, that we did eventually inform them. They also allege that we didn't inform them until after their three trial payments were made. But let me just – Well, right. But that – okay. But we are at the pleading stage, correct? Yes. So doesn't that allegation take them somewhere forward? No, it doesn't. Number one, as a contract theory, it was never raised below ever. They had a single theory of breach. You didn't give me an offer or a permanent modification. Never raised below on traditional principles of waiver. It's not appropriate to consider here. But there's no – honestly, there's no language here. It says, in fact, the contrary. If you haven't made a decision and offered them a permanent modification by what's called the modifective date, which is not the third trial period, it's 30 days from that third trial period, the effect of that is that the agreement terminates. It would be a perverse interpretation of a purported contract that an event of termination would also be an event of breach. You can't have it both ways. There's nothing in here that imposes that deadline. And it's also contrary to the HAMP guidelines. This is how it turns the program on its head. This was the very earliest – But if, in fact, they kept taking payments after they knew they weren't going to qualify, doesn't that somehow give them something to hang their hat on on the Rosenthal and the unfair competition? The actual allegation is this, that Chase informed them, Ms. Cerenovsky, that she didn't qualify, she had insufficient information. By the way, they never alleged that's incorrect, that was inaccurate. And they invited her to reapply, and she started another trial, at the conclusion of which she was determined to still have insufficient income to qualify for a HAMP modification. I don't think that states a cause of action under any theory, but that's the facts as it lay. It may not be a winning one, but it's still the pleading stage, so that's what I'm questioning here. All right. Unless the judges have any further questions, we've taken you over your time. Thank you. Thank you. You have two minutes for rebuttal. Did you ever submit a proposed amended complaint, or was this all hashed out orally? We would gladly submit a proposed amended complaint. No, you can answer that question, did you ever submit that? Oh, did we? I'm sorry. I didn't hear. I'm an old trial judge, and so answer the question. We didn't. Okay. You're saying you would gladly. Yes. And I don't know whether it's appropriate, but could you submit one here? To this Court? Just to see what you would allege. In other words, if you put it in your brief, we would have it. It's an effect. If you started off by, you know, leaving the impression that all you wanted was permission to file an amended complaint and maybe if we saw it, it might be helpful. It might be helpful to see what you would allege instead of arguing it this way. We didn't do it because I didn't feel that it would be an appropriate addition to the record, but Chase provided the consolidated amended complaint in the other case against Chase, so I think to which this Court can take judicial notice. So I think you have a complaint before you that looks a lot like what an amended complaint would look like here. I want to address the question. Where is that document? That was an attachment to the August 2nd 20HA letter submitted by Chase. And it's a 200-page complaint because it incorporates some other States' claims, but it's much more detailed. And frankly, at this point, our amended complaint would look a lot like that one. But it would also add the allegation that Chase, as a matter of practice, did not  And so I want to address that claim. Even where it's clear that they should have. Right. In other words, should have. By that, I mean not necessarily your interpretation of should have, but should have because they really, they determined in effect that they were qualified, but they just didn't send the, they just didn't send the agreement. We would allege that they just didn't do it for anybody, or they very rarely did it. And in fact, that's why I tried to accuse them. Even though they had concluded that all of the requirements had been met. And is that what you're saying? I don't think I have enough facts at this point to allege that, but I know, but I do. That still wouldn't make it a contract, would it? So is that what you're saying would be the promissory estoppel? No, that would be part of a waiver argument. And I think I want to return to paragraph 2 of this, of the TPP. It says that they're either going to sign and return the contract or they're going to send a rejection letter. And so that contemplates that this document means something, even if they're never going to send back a signed TPP, even if they're going to determine that the person is not qualified and they're going to reject them during the three months. And I want you to imagine a situation where someone applies, they're making payments, it's month two, they haven't gotten a rejection letter yet, Chase is still making its decision, but Chase goes ahead and forecloses. I think that would be a breach of the TPP, even though there's no signed TPP. And so I don't think that you can make offer and acceptance piecemeal. I think that what the signed TPP means goes to the meaning of the promise in the absence of a signed TPP is going to mean something different in month two than it is in month five or month six or month seven. Then, when they've been accepting payments, there are questions of waiver. There are questions of whether that performance has been excused. And those are factual questions. Kagan. Unless there's additional questions, you're now five minutes over. So, but we wanted to have all the questions answered. Any additional? Can I just ask one more question? Yes, sir, surely. How do you deal with the language that this plan will not take effect unless until both I and the lender sign it? And the lender provides me with a copy of the plan with the lender's signature. So I'm just trying to understand. So the plan itself is some sort of an offer, and yet even if you say it is, you have this language in which suggests that it doesn't mean anything until we sign it. It's not just that they didn't sign it, but there's a provision in the agreement that says in effect that this plan will not take effect unless and until both I and the lender sign it, and the lender provides me with a copy of the plan. I think it's ambiguous and kludgy drafting that has to be interpreted within the context of the architecture of the entire agreement, and that the appellants have put forward a plausible interpretation that that refers to a ministerial duty at the end once they've determined that the plaintiffs are qualified, that the appellants are qualified. And we've never alleged that an unqualified person should get a HAMP modification. People were pre-qualified, they got the TPP, but if they are qualified and they perform, they should be offered a HAMP modification. If they're unqualified, they should get a rejection letter, and you don't need a signed TPP, and you don't need a signed modification for that. And in terms of the wording of this whole TPP, how do we deal with the issue that this was drafted by the government? Under both California law and the restatement, ambiguities in a document should be construed against either the drafter or the party that offered it. And if you look in the bottom right-hand corner, this was modified by Chase. But they were required to offer it. They weren't required to offer this. I mean, they weren't required maybe not to participate in the program, but they were required to send this particular worded TPP unless they got permission from the firm. Right. They could get permission to alter it. And I would say that the stuff at the bottom that says JPMC modified 609 shows that they did modify it. There are different versions of the TPP that show up in different cases, for example, Enry City and Cave v. Saxon. But the important thing is that they had to use this form. They didn't have to enter into this contract with Ms. Morales until they were ready to process her application. They, until they had run the NPV and run the waterfall, determined that she was at least preliminarily qualified. These are individual contracts with individual people, and they didn't have to offer it to them. Just because it's a form contract doesn't make it somehow not binding. No, no, I'm not saying it's a, you know, in New York we'd call it a Blumberg  It's a contract that was, in fact, drafted by the government, which is different from going into a stationery store and buying a form. Yes. All right. Thank you for your argument. This matter will stand submitted.
judges: Schroeder, Callahan, Cjj Korman (E. New York), Dj